United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Sandra Paz, Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 14-62513-Civ-Scola |
| ) | |
| Seterus, Inc., Defendant ) | |

**Order on Motions for Summary Judgment**

Sandra Paz, as the borrower on a residential mortgage, is suing Seterus, Inc., the servicer of her loan. According to Paz, Seterus violated various provisions of the Real Estate Settlement Procedures Act and regulations promulgated thereunder. Both parties have filed motions for summary judgment. (ECF Nos. 85 & 88.) For the reasons that follow, both motions are **denied in part and granted in part**.

### 1. Background

Paz procured a $295,000 residential home loan, on May 31, 2007, which was secured by a mortgage encumbering her home in Pembroke Pines, Florida. About a year later she defaulted and JPMorgan Chase Bank, N.A., the servicer of her loan at that time, commenced a foreclosure action in Broward County state court in November 2008. On August 1, 2010, Seterus began servicing Paz's loan. Eventually the state court entered a final judgment of foreclosure in March 2014 and the first foreclosure sale was set for June 18, 2014. This sale was continued to September 16, 2014, when the property was finally sold at auction. Although a certification of sale was issued, title has not been transferred and Paz continues to live in the house.

Before the sale, Paz claims that she submitted two loss mitigation applications, one in May 2014 and one in July 2014. Seterus, however, acknowledges receiving the July application only and questions whether Paz submitted the May application. The parties' dispute centers on whether both Paz's applications and Seterus's responses, or lack thereof, complied with the requirements of various provisions of the RESPA regulations.

### 2. Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should

be decided at trial . . . Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

### 3. Analysis

By way of background, certain regulations promulgated in accordance with RESPA dictate the manner in which mortgage servicers must handle borrowers' loss mitigation applications. 12 C.F.R. § 1024.41. The procedures, also known as Regulation X, which became effective on January 10, 2014, provide a comprehensive set of interrelated requirements and deadlines that servicers must comply with when a borrower submits a loss mitigation application. The requirements are designed to ensure that, before a borrower with a federally related loan loses her home to foreclosure, she is afforded a

reasonable opportunity to seek alternatives through a loss mitigation application submitted for the servicer's review. Any borrower who has been damaged by a servicer's violation of the requirements of §1024.41 is expressly authorized to bring a private right of action. 12 U.S.C. § 2605(f).

The parties have both filed motions for summary judgment. Paz has filed a motion for partial summary judgment, on liability only, conceding that her damages claims require resolution through trial. She contends that there is no dispute that Seterus's handling of her July 8, 2014 loss mitigation application was deficient and in violation of various provisions of the RESPA regulations. She also submits that summary judgment should be granted against Seterus for what Paz says was a clear pattern and practice of Seterus's non-compliance with RESPA. Seterus counters that its responses to Paz's application were entirely proper, both individually and when taken as a whole, and that Paz has failed to provide any evidence in support of her purported damages. Further, says Seterus, Paz has fallen far short of establishing any pattern or practice of Seterus's RESPA violations.

**A. Seterus's § 1024.41(b)(2)(i)(B) notice, dated July 8, 2014, in response to Paz's July 2014 loss mitigation application was defective.**

As required by 12 C.F.R. § 1024.41, a servicer, within five days of receipt of a loss mitigation application, must notify the borrower-applicant, in writing, that her application is "either complete or incomplete." 12 C.F.R. § 1024.41(b)(2)(i)(B). If the application is determined to be incomplete, the servicer's notice must "state the additional documents and information the borrower must submit to make the loss mitigation application complete . . . ." *Id.*

According to Seterus, its paragraph (b)(2)(i)(B) notice "unambiguously designated Borrower's Application as incomplete and . . . unmistakably requested additional documents necessary to complete [the] application." (Def.'s Resp., ECF No. 98, 9.) The Court disagrees: Seterus's notice did not unambiguously alert Paz that her application was incomplete nor did it adequately explain which documents were needed to complete her application.

To be sure, on the first page of its July 8, 2014 correspondence, in response to Paz's application, Seterus stated, "At this time, your application is incomplete." (ECF No. 85-2, 1.) Then, on the next page, towards the bottom, Seterus listed four documents, in a table, which it informed were "required to evaluate [Paz's] loan for assistance." (*Id.* at 2.) These seemingly straight-forward instructions, however, were then directly contradicted by the sentence that followed: "You still need to send these documents to us, *unless noted in*

*the 'Documents we have received' table above.*" (*Id.* (emphasis added).) Among the documents listed in the "table above" were all four "required" documents listed at the bottom of page two. (*Id.*)

If Seterus had written only: "You still need to send these documents to us," and left it at that, then the letter would have likely satisfied the notice requirements of paragraph (b)(2)(i)(B). But Seterus did not leave it at that. Instead, it specifically exempted from its demand any document that was listed as being required if that document was also listed in the table above. The inescapable implication for Paz was that she did not need to send any other documents. Seterus's notice, then, simply did not comply with the regulation's requirement that "the servicer's notice must state the additional documents and information the borrower must submit." 12 C.F.R. § 1024.41(b)(2)(i)(B). Although Seterus's letter actually stated, "your application is incomplete," it, in essence, stated on the following page, "your application is complete" because it failed to identify any other documents that Paz needed to send. To the Court's eye, there is no doubt that, in its opacity, Seterus's initial notice ran afoul of the requirements of paragraph (b)(2)(i)(B).

**B. Even viewing the evidence in the light most favorable to Seterus, Seterus failed to cure the deficiencies in its initial July 8th notice.**

12 C.F.R. § (c)(2)(iv) specifically addresses actions that can be taken by a servicer who "later discovers" that "additional information or corrections to a previously submitted document are required to complete [an] application." 12 C.F.R. § 1024.41(c)(2)(iv). In essence, paragraph (c)(2)(iv) provides the servicer an opportunity to cure any prior deficiencies: "the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of (f)(2)[, the provision that prohibits a servicer from initiating a foreclosure until a complete application has been evaluated,] and (g)[, the provision that prohibits a servicer from completing a foreclosure sale until after a completed application has been evaluated,] until the borrower is given a reasonable opportunity to complete the application." *Id.* The paragraph then goes on to say that a "servicer that complies with this paragraph will be deemed to have fulfilled its obligation to provide an accurate notice under paragraph (b)(2)(i)(B)," the initial notice paragraph. Accordingly, so long as the servicer treats an application as complete, and thus holds off on initiating, per paragraph (f)(2), or completing, per paragraph (g), the foreclosure until "the borrower has been given a reasonable opportunity to complete the application," the servicer is in compliance with the regulations.

The issue that remains then is whether Seterus afforded Paz "a reasonable opportunity to complete the application." Paz contends, in her

motion for partial summary judgment, that the letters that Seterus sent on August 5th and August 22nd failed to satisfy paragraph (c)(2)(iv)'s cure provision. Seterus contends that, between the three follow-up letters it sent after its initial notice and two telephone calls it had with Paz or Paz's representative, Paz was ultimately provided a reasonable opportunity to complete her application.

There are indeed factual disputes regarding the letters and phone calls that Seterus relies upon to show that it complied with paragraph (c)(2)(iv). These factual disputes, however, are immaterial. Even if the Court accepts Seterus's allegations regarding the letters and the calls as true, its communications taken as a whole still cannot be interpreted as providing Paz a reasonable opportunity to complete her application.

As for the letters, the Court finds that two of them suffer from the exact same deficiencies as Seterus's initial notice letter—both Seterus's August 5th and August 22nd letters indicate that no additional paperwork was necessary in the same manner as the July 8th initial notice letter did. While Seterus's August 6th letter, on the other hand, was clear, informing Paz, without equivocation, that certain documents were missing, that letter was followed shortly by the August 22nd letter that again indicated that no further documents were needed. Thus although the August 6th letter by itself could have arguably provided the notice called for under paragraph (c)(2)(iv), it was directly contradicted by the letters that both preceded and followed it. As a result, in the context of being bookended by the faulty August 5th and August 22nd letters, the August 6th letter did not reasonably alert Paz to the documents that Seterus now contends were missing or improper.

The telephone conversations that Seterus alleges took place suffer from the same problems. According to Seterus, its representative called Paz on July 16, 2014 and informed her that her profit and loss statement was signed but not dated; her pay stubs were outdated; and Seterus needed two months of bank statements. (Def.'s Stmt. of Mat. Facts ¶ 37, ECF No. 87, 7.) This conversation, however, was then followed by the August 5th letter which, as described above, indicated that no further paperwork was needed. Similarly, Seterus's telephone call with Paz's representative on August 18th was immediately contradicted by the August 22nd letter. During the August 18th call, Seterus asserts that it informed Paz's representative that it had not received "proof of wages, profit and loss, and proof of residency." (*Id.* at ¶ 42, ECF No. 87, 8.) But even if the Court were to accept Seterus's contention that this call took place as Seterus describes, the sentiment of the call was

immediately contradicted by Seterus's August 22nd letter, which again indicated that no further documents were necessary.

"[T]ransparency and facilitation of communication is the goal of RESPA." *Bates v. JPMorgan Chase Bank, NA*, 768 F.2d 1126, 1135 (11th Cir. 2014). Seterus did not meet that goal. At best the sum total of Seterus's communications with Paz were unclear; at worst they were wholly misleading. Though Seterus may have intended its July 8th initial notice and its August 5th and 22nd letters to inform Paz that she needed to send the documents listed on the second page, that is not what those letters actually said. The letters specifically advised Paz that she did not need to send the documents listed in the "required" table if they were also listed in the other table. Seterus contends that it tried to clarify with Paz, or her representative, that indeed her application was incomplete. However, even affording Seterus all benefit of the doubt, each of Seterus's attempts at clarification was followed by another faulty letter, advising Paz that she didn't need to send any other documents.

Because Seterus never cured the defects of its July 8th initial notice, Paz's application should have been deemed "facially complete" under paragraph (c)(2)(iv). Since Paz's application was facially complete, Seterus was further prohibited from conducting a foreclosure sale as set forth under paragraph (g). In short, even viewing the evidence in the light most favorable to Seterus, in addition to providing Paz with a defective initial notice, Seterus also violated paragraphs (c)(2)(iv) and (g) by conducting the foreclosure sale without affording Paz "a reasonable opportunity to complete [her] application." 12 C.F.R. §§ (c)(2)(iv), (g). Because of these deficiencies and the defects detailed above, Seterus's handling of Paz's application generally also fell far short of paragraph (b)(1)'s requirement that a servicer "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1).

**C. On the other hand, Seterus did not violate paragraph (c)(1) because Paz's July 2014 application was only "facially complete" and not actually complete.**

Paragraph (c)(1) provides that if "a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall . . . evaluate [the application]; and . . . provide the borrower with a notice in writing stating [any] loss mitigation options, if any . . . ." 12 C.F.R. § 1024.41(c)(1). On the other hand, paragraph (c)(iv) explains that "for the purposes of paragraph (c)," an application is "considered complete . . . as of the date the application was actually complete . . . ." Paz concedes that, as Seterus

argues, Seterus was under no obligation to actually review her application because it was only facially complete and not actually complete. (Pl.'s Resp., ECF No. 95, 9 ("Seterus also argues that because Plaintiff's application was never complete, it was not obligated to review it. As to that, Plaintiff agrees.").)

### D. To the extent Paz's complaint seeks damages for Seterus's alleged violations of 12 C.F.R. § 1024.38, those claims fail.

Under 12 C.F.R. § 1024.38, a servicer is required to "maintain policies and procedures that are reasonably designed to," among other things, "identify documents and information that a borrower is required to submit to complete a loss mitigation application and facilitate compliance with the notice required pursuant to § 1024.41(b)(2)(i)(B)" and "facilitate the sharing of accurate and current information regarding . . . a borrower's loss mitigation application . . . among appropriate servicer personnel . . . ." 12 C.F.R. §§ 1024.38(b)(2)(iv), (b)(3)(iii). The Court agrees with Seterus that Paz's claims under these regulations fail. Borrowers have no private right of action under § 1024.38. *See Smith v. Nationstar Mortgage*, Case No. 15-13019, 2015 WL 7180473, *4 (E.D. Mich. Nov. 16, 2015) (noting the Consumer Financial Protection Bureau's concern that allowing private actions to enforce these regulations "would lead to overenforcement"); *Sharp v. Deutsche Bank Nat. Trust Co.*, Civil No. 14-CV-369-LM, 2015 WL 4771291, *6 (D. N.H. Aug. 11, 2015) (same).

### E. Seterus has established that it was under no obligation to review Paz's May 2014 application.

The parties dispute whether Seterus ever received Paz's May 2014 loss mitigation application. Paz claims that she sent this application on May 6, 2014; Seterus insists that it was never received. However, even if Paz had sent the application and Seterus received it, as she asserts, Seterus was under no obligation to review it under Regulation X.

It is undisputed that at the time Paz sent in her May application, a foreclosure sale had been set for June 18, 2014. Thus Paz's application, as she concedes, was sent only 43 days before a scheduled foreclosure sale. (Def.'s Mot., ECF No. 88, 7.) The requirements of paragraph (b)(2)(i) only kick in when "a servicer receives a loss mitigation application 45 days or more before a foreclosure sale." 12 C.F.R. § 1024.41(b)(2)(i). That paragraph is then rendered inapplicable to Paz's May application. Additionally, the procedures mandated by paragraph (c)(1) only apply "if a servicer receives a *complete* loss mitigation application . . . ." 12 C.F.R. § 1024.41(c)(1) (emphasis supplied). An incomplete application can only be rendered "facially complete" under paragraph (c)(2)(iv) if the notice requirements of paragraph (b)(2)(i)(B) are triggered, which were not, and either the borrower submits information

requested in the notice or the notice does not request any additional information. Here, the notice requirements of paragraph (b)(2)(i)(B) were never in play, assuming the application was actually sent to Seterus, because it would have been received less than forty-five days before the scheduled foreclosure sale.

Paz argues that her May 6th application was retroactively rendered timely when the foreclosure sale was reset for September 16th. The Court finds Paz's suggestion unworkable. By the regulation's plain terms, a servicer would be wholly within its rights if it discarded an incomplete application it received less than forty-five days before a scheduled foreclosure sale. Paz has cited no regulatory authority for her suggestion that a servicer must hold onto an incomplete application just in case a foreclosure sale is later reset to a new date that could retroactively render the application timely. *Cf. Lage v. Ocwn Loan Serv. LLC*, 2015 WL 7294854, 14-cv-81522-BLOOM/VALLE, *7 (S.D. Fla. Nov. 18, 2015) (Bloom, J.) (applying similar reasoning to a borrower's suggestion that a servicer should be required to hold onto an application filed before Regulation X's effective date in case the application becomes complete at some later point, after the effective date). Thus even if Seterus had received Paz's May 2014 application, it was under no obligation to evaluate or review it.

**F. Genuine issues of material fact remain regarding certain aspects of Paz's damages claims.**

Seterus contends that Paz cannot prove that she has suffered any actual damages. The Court agrees in part and disagrees in part. Under RESPA, a servicer who violates the loss mitigation application regulations is liable for "any actual damages to the borrower as result of the failure; and any additional damages . . . in the case of a pattern or practice of noncompliance . . . ." 12 U.S.C. § 2605(f)(1).

**(1) *Paz has established that genuine issues of material fact remain regarding her attorneys' fees and costs.***

In her complaint, Paz seeks damages in the form of "expenses associated with legal services rendered as a result of the failure to properly evaluate her loss mitigation application." (Compl. ¶ 40, ECF No. 79, 13.) Seterus contends that legal fees are not cognizable as damages under RESPA. To the contrary, however, borrowers are indeed entitled to legal fees and costs incurred as a result of a servicer's failures to properly handle a mitigation loss application. *See Miranda v. Ocwen Loan Serv., LLC*, 15-61434-CIV_COHN/SELTZER, 2015 WL 7767209, *4, (S.D. Fla. Dec. 1, 2015) (Cohn, J.) (noting that attorneys' fees incurred as a result of RESPA violations are recoverable).

Here, Paz has submitted an affidavit from Julius Seiler who claims to have personal knowledge that "Paz paid Litigation Law, P.A., for services rendered in the amount of $700.00 for legal representation subsequent to the July 2014 Modification Application submitted to the Defendant, Seterus, Inc." (Seiler Aff. ¶ 2', ECF No. 94-2.) Paz has also presented a certified letter sent to Seterus wherein her attorney refers to errors Seterus made in handling Paz's loss mitigation application. (Atty. Letter, ECF No., 94-3, 3–4.) A receipt shows that $9.65 was paid to send the letter, (Rcpt., ECF No. 94-3, 1–2), and the contents of the letter indicate that its writing was occasioned by Seterus's mishandling of Paz's application. Additionally, Belinda Reyes, an employee of Litigation Law, P.A., on multiple occasions described actions she took on Paz's behalf after Seterus sent its flawed initial paragraph (b)(2)(i)(B) notice. (*E.g.*, Reyes Depo. 36:5–16, ECF No. 94-1, 36.) Even Seterus acknowledges that Paz's representative, presumably Reyes, called Seterus at least once to discuss the status of Paz's July 2014 application and faxed Seterus at least twice to provide follow up documents. (Def.'s Stmt. of Facts ¶¶ 42–43, ECF No. 87, 8.) Paz has presented more than merely conclusory allegations of actual damages; the damages she describes are not speculative. Instead, there is concrete record evidence that establishes a genuine issue of material fact regarding whether Paz incurred certain fees and costs as a result of Seterus's RESPA violations.

**(2)** ***Paz cannot, however, survive summary judgment on her claims for emotional distress.***

While Paz's allegations of emotional distress are sufficient to survive a motion to dismiss, she has failed to sufficiently "set forth specific facts showing that there is genuine issue for trial" to get her past summary judgment. *Anderson*, 477 U.S. at 248.

In order to survive summary judgment, Paz's "'testimony must establish that [she] suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that [she] suffered emotional distress nor the mere fact that a . . . violation occurred supports an award for compensatory damages.'" *McLean v. GMAC Mortg. Corp.*, 398 Fed. App'x 467, 471 (11th Cir. 2010) (quoting *Akouri v. Fla. Dep't of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005). Broad generalized damages, as Paz has alleged here, are insufficient. *See McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1367 (S.D. Fla. 2009) (O'Sullivan, J.).

Paz's complaint alleges only that her damages "include" emotional distress. (Compl. ¶ 40, ECF No. 79, 13.) Her response to Seterus's motion for summary judgment does not offer much more. She posits merely that "[i]t is

hardly unreasonable to infer that the prolonged uncertainty regarding the status of her home exacerbated emotional distress caused by the foreclosure" and that "Seterus has certainly not shown that it is impossible for a reasonable fact finder to concluded that prolonged foreclosure experience did not cause Plaintiff any emotional distress." (Pl.'s Resp., ECF No. 95, 11.)  This is not enough and her claim for emotional distress damages therefore fails.

### (3) *Nor can Paz survive summary judgment on her claim that Seterus participated in a pattern or practice of noncompliance.*

In order to recover statutory damages, a plaintiff must show "a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1)(B).  The term pattern or practice is considered to "'suggest[] a standard or routine way of operating.'" *McLean*, 595 F. Supp. 2d at 1365 (quoting *In re Maxwell*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002)).

Paz's complaint contends that she is entitled to statutory damages because of Seterus's "systemic failure to implement sufficient policies and procedures and to employ a sufficient number of appropriately qualified employees in connection with its loss mitigation operations." (Compl. ¶ 41, ECF No. 79, 13.)  However, the record evidence establishes that Seterus mishandled only Paz's July 2014 application, albeit through a series of missteps.  The regulatory violations with respect to this one application alone cannot establish that Seterus has a standard or institutionalized practice of noncompliance.  *See McLean*, 595 F. Supp. 2d at 1365 (noting that servicer's failure to respond to two letters did not support a finding of a pattern or practice); *In re Tomasevic*, 273 B.R. 682 (Bankr. M.D. Fla. 2001) (failure to respond to one qualified written request did not amount to a "pattern or practice").

Seterus's corporate representative testified that Seterus uses "different versions" of a standard form letter to respond to every loss mitigation application that it receives. (Lee Depo. 41:1–4, ECF No. 85-1, 41.)  From this, Paz gleans that "it is undisputed that Seterus sends the same fatally ambiguous form letter to every borrower who submits an application that Seterus determines to be incomplete." (Pl. Mot., ECF No. 85, 8.)  In making this claim, Paz mischaracterizes this testimony and disregards other evidence.  The representative explained that Seterus uses templates that are modified based on the particulars of each application. (Lee Depo. 35:17–36:4, ECF No. 85-1, 35–36.)  That this is the case is borne out by comparing the four letters that Paz received.  Three of them have distinct differences: Seterus's July 8th letter lists eight documents in the first table and four of those eight documents in a second table, (July 8, 2014 Letter, ECF No. 85-2, 2);  the August 5th letter

lists only three documents in the first table and then four in the second table, (Aug. 5, 2014 Letter, ECF No. 86-1, 129); and the August 6th letter shows an entirely different layout altogether, listing only four documents on its first, and only, page. (Aug. 6, 2014 Letter, ECF No. 86-1, 134.) The fourth letter, sent on August 22nd, is the same as the letter send on August 5th. (Aug. 22, 2014 Letter, ECF No. 85-3, 2.) The variety exhibited by these letters alone dispels any notion that "Seterus sends the same fatally ambiguous form letter to every borrower." *See Lage*, 2015 WL 7294854 at *16 (granting summary judgment in servicer's favor where the borrower failed to establish that the servicer violated RESPA as to third parties); *Miranda*, 2015 WL 7767209 at *5 (finding no pattern or practice where the borrower failed to come forward with any specific evidence that servicer violated RESPA in servicing other loans).

Paz has presented evidence that Seterus has mishandled only one application and nothing more. This is insufficient to establish a pattern or practice of noncompliance.

### 4. Paz's motion to amend (ECF No. 103) and Seterus's motion to strike (ECF No. 104) are both *denied*.

While the Court indeed admonishes Paz's attorneys to carefully follow the rules of this Court, it declines Seterus's invitation to strike Paz's filings as a result of their transgressions. Further, Seterus contends that a number of paragraphs in both Paz's statement of facts and as well as her response to Seterus's statement of facts lack evidentiary support. The Court declines to strike these particular paragraphs because the Court did not rely on any of them in reaching its decision. Seterus's motion (ECF No. 104) is **denied**.

Lastly, the Court made do with Paz's original filings and did not find her proposed amendment particularly helpful considering that both motions had already been substantially briefed. Her motion (ECF No. 103) is therefore **denied as moot**.

### 5. Conclusion

Both parties' motions for summary judgment are **granted in part and denied in part**. (ECF Nos. 85 & 88.)

To the extent that Paz seeks summary judgment in her favor on the grounds that Seterus violated certain provisions of Regulation X in handling her July 2014 application, her motion succeeds, as set forth in detail in sections 3.A. and B. above, with respect to: 12 C.F.R. §§ 1024.41 (b)(1), (b)(2)(i)(B), (c)(2)(iv), and (g). Conversely, Seterus's motion for summary judgment on those grounds is denied.

To the extent that Seterus seeks summary judgment in its favor regarding Paz's allegation that Seterus violated 12 C.F.R. § 1024.41 (c)(1) and 12 C.F.R. § 1024.38 in its handling of her July 2014 application, its motion is granted, and Paz's, to the extent these provisions were addressed, is denied, as set forth in detail in sections 3.C. and D.

Seterus's motion for summary judgment on Paz's claim that it improperly handled her May 2014 application is granted in all respects as described in section 3.E.

As discussed in section 3.F., Seterus's motion for summary with respect to Paz's claims for emotional distress and statutory damages is granted. On the other hand, Seterus's motion is denied with respect Paz's claim for legal fees and costs, leaving this as the sole issue to be decided at trial.

**Done and ordered** at Miami, Florida on April 27, 2016.

_____
Robert N. Scola, Jr.
United States District Judge